## In re SCRANTON & SHORT, Inc.

(District Court, D. Oregon. March 30, 1925.)

### No. B-8008.

1. **Bankruptcy ⬤175 — Bank whose cashier knew and approved of sale of stock of merchandise to corporation cannot later set up that Bulk Sales Law was not complied with.**

Bank whose cashier knew of sale of entire stock by merchant debtor of bank to corporation and approved thereof cannot, in bankruptcy proceedings against such corporation, set up that Oregon Bulk Sales Law was not complied with.

2. **Corporations ⬤30(1)—Corporation buying stock of merchandise held to have assumed indebtedness owed by seller to bank.**

Where merchant, indebted to bank, who had carried on business for many years, organized corporation to buy store and sold interest therein to another, with understanding that on payment by such person for shares in corporation note owed by merchant to bank was to be paid, and interest was paid on note from profits of business carried on by new concern, which, before its bankruptcy, met many of prior obligations of merchant arising from business prior to incorporation, such corporation assumed debt of merchant to bank evidenced by note.

3. **Corporations ⬤228—Creditors of bankrupt corporation have relief over against unpaid stock after property of corporation is exhausted.**

Creditors of bankrupt corporation have relief over against unpaid stock for payment of

their demands after property of corporation is exhausted, and fact that shareholder is insolvent does not alter such liability.

**4. Corporations ☞221—Organization of corporation held sufficient to charge stockholder with liability for unpaid stock subscription on bankruptcy thereof.**

Where corporation to take over merchandise business had been granted certificate, and, though no stock was ever issued, most of it was subscribed for, and such corporation carried on business in corporate name, though incorporation was irregular, its organization was sufficient to hold stockholder liable for unpaid stock subscriptions on the bankruptcy of corporation.

In Bankruptcy. In the matter of Scranton & Short, Inc., bankrupt. A claim by the La Grande National Bank was disallowed by the referee. Finding and order of referee set aside, and claim allowed.

Cochran & Eberhard, of La Grande, Or., for claimant.

Robert S. Eakin, of La Grande, Or., for trustee.

Raley, Raley & Steiwer and H. J. Warner, all of Pendleton, Or., for objecting creditors.

WOLVERTON, District Judge. Prior to 1918, C. H. Scranton and Harris French were partners, engaged in mercantile business, consisting of men's furnishing goods, at La Grande, Or. In that year Scranton bought French's interest; the purchase price being $10,000. Scranton borrowed the money from the La Grande National Bank with which to make the purchase. The note given for the loan was never paid in full, but was reduced to $8,000. Scranton continued to carry on the business in his own name until about October 1, 1923, when a corporation was formed, under the name of Scranton & Short, Inc., which took over the business. The capital stock of the corporation was fixed, so far as the record shows, at $25,000, consisting of 250 shares at $100 per share; 200 shares of stock were subscribed—99 shares each by Scranton and Short, and one share each by their wives. Scranton was to hold the entire stock, although none was ever issued. Under the agreement, Short was to pay $12,000, and, when paid, he was to get (he and his wife) 100 shares. The stock of merchandise was inventoried at approximately $22,500. The incorporation was irregular and never became a wholly completed organization, although a certificate of incorporation was issued. The business was carried on in the corporate name until bankruptcy proceedings were instituted about Au-

gust 16, 1924. Short never paid the $12,000, nor any part of it except $800. His delinquency was the cause of the failure in the business of Scranton & Short, Inc. The business was carried on much as it had been before the incorporation. The bills payable of the Scranton business were met as though there had been no reorganization, and some money was applied on the bank note in the way of meeting the interest as it became due.

In due time the bank presented its claim to the trustee for allowance. The claim was later amended, but, upon objections filed by divers of the creditors, it was disallowed by the referee.

The special reasons assigned why the claim should be allowed are: First, that the bank was never notified, as required by the Bulk Sales Act, of the sale by Scranton to Scranton & Short, Inc.; and second, that under the transfer arrangements between Scranton and Short the corporation agreed to pay the debts of the business, and especially the bank obligation of $8,000.

[1] As to the first specification, but little need be said. The bank had ample notice and knowledge that the sale was to be made. Its cashier was in touch with both Scranton and Short at the time, and was well advised of the conditions of the project, and approved it, being of the view that it was a good business venture, and would enable Scranton to meet his obligations. Such being the case, the bank cannot now insist that the Bulk Sales Law (Or. L. § 8161 et seq.) was not complied with, to its disadvantage.

[2] The second specification is more difficult of solution. I am of the opinion, however, that it should be resolved in favor of the bank.

It must be premised that the business and good will were wholly Scranton's, prior to the transfer to Scranton & Short, Inc. He had been carrying it on for years. The business and stock in trade, with the bills receivable arising therefrom, were practically all he had. They were all his creditors had to look to for their reimbursement. The bank was one of his creditors from the time he bought Harris French's interest. When the corporation was organized, it was well understood that, when Short paid in his $12,000, the bank note was to be paid. Indeed, while the business was being carried on by the new concern, interest on the note was paid from it. Aside from this, the new concern met many, if not all, of the prior obligations of Scranton arising from his prior business,

and perhaps some of his individual debts, but not the bank note, except some of the interest accruing thereon. True, the stock of goods and the business of Scranton were transferred to the corporation. Short was to pay $12,000 for his stock. Thenceforth he and Scranton would share equally in the business. The $12,000, when paid, would become available for the payment by Scranton of his obligation to the bank. In short, Short was purchasing an interest in the business, with the tacit understanding between the parties that Scranton's obligations should all be paid, and naturally the payment was to come from the business.

[3, 4] The capital stock subscribed by each of the parties represented their respective interests in the business and the creditors have relief over against the unpaid stock for the liquidation and payment of their demands after the property of the corporation is exhausted. That Short himself is insolvent, if such be the case, does not alter the liability. This corporation was so far completed in its organization that Short could not deny his liability on the stock, and I am strongly of the impression that there was, in effect, an assumption of this bank obligation along with the rest by Scranton & Short, Inc., which fixes its liability therefor.

The finding and order of the referee will be set aside, and the bank's claim will be allowed.